

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed April 7, 2006                        **United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DALE CLAY BULLOUGH | § | CASE NO.05-31531-BJH-11 |
| | § | |
| Debtor. | § | |

**MEMORANDUM OPINION AND ORDER DENYING CONFIRMATION**

The Court held a hearing to consider confirmation of the Debtor's Fourth Amended Plan of Reorganization (the "Plan") on April 3, 2006. Several parties oppose confirmation of the Plan. At the conclusion of the hearing, the Court took confirmation of the Plan under advisement.

The Court has core jurisdiction over the parties and the issues to be decided at a confirmation hearing in accordance with 28 U.S.C. §§ 1334 and 157(b). This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law in connection with the hearing on

confirmation of the Plan.

While the objectors raised a number of technical objections to confirmation of the Plan, many of those objections were resolved, by agreement of the parties, through the Debtor's "Modifications to Debtor's Fourth Amended Plan of Reorganization," which was filed a few days before the commencement of the confirmation hearing. Three creditors appeared at the confirmation hearing and continued to object to confirmation of the Plan – Buckeye Retirement Co., LLC, LTD. ("Buckeye"), Midfirst Bank ("Midfirst"), and Knights Franchise Systems, Inc. ("Knights"). Buckeye actively participated at the confirmation hearing, by cross-examining witnesses and arguing in opposition to confirmation of the Plan. Midfirst Bank and Knights, while present at the confirmation hearing, simply joined in Buckeye's objections.

After carefully considering the evidence offered at the confirmation hearing and the arguments of counsel for Debtor and Buckeye, the Court concludes that confirmation of the Plan must be denied, for the reasons explained below. Buckeye advanced four major arguments in opposition to confirmation of the Plan: (1) that the Plan was not proposed by the Debtor in good faith in accordance with section 1129(a)(3) of the Bankruptcy Code, (2) that the Plan did not satisfy the best interests test of section 1129(a)(7) of the Bankruptcy Code; (3) that the Plan was not feasible in accordance with section 1129(a)(11) of the Bankruptcy Code; and (4) that the Plan did not satisfy the absolute priority rule of section 1129(b)(2)(B)(ii) of the Bankruptcy Code.

Turning first to the issue of good faith, the Court must decide if the Debtor proposed the Plan in good faith and not by any means forbidden by law, as section 1129(a)(3) of the Bankruptcy Code requires. The good faith of a reorganization plan must be viewed in light of the totality of the circumstances surrounding establishment of the plan. *In re Texas Extrusion Corp.*, 844 F.2d 1142,

1160 (5th Cir. 1988). The Court's inquiry must include all of the facts and circumstances surrounding the plan to determine if the plan will fairly achieve a result consistent with the Bankruptcy Code. *In re Landing Assoc. Ltd.*, 157 B.R. 791 (Bankr. W.D. Tx 1993). The good faith requirement is satisfied where a chapter 11 plan is proposed with a legitimate and honest purpose to reorganize and has a reasonable hope of success. *In re Sun Country Dev., Inc.*, 764 F.2d 406 (5th Cir. 1985). If good faith is challenged, the Debtor bears the burden of proof on the issue by a preponderance of the evidence. *In re Barnes*, 309 B.R. 888, 892 (Bankr. N.D. Tx. 2004) (citing *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 802 (5th Cir. 1997)).

Based upon the evidence before it, the Court concludes that the Plan was not proposed in good faith. There are several provisions of the Plan that compel this conclusion, notwithstanding the Debtor's cryptic testimony that he proposed the Plan in good faith. The Court's analysis starts with a very unusual provision of the Plan – *i.e.*, section 1.45 of the Plan – the so-called "Supplement Overlay Conditions."

A brief background will be helpful in putting this provision in context. The Plan purports to liquidate the Debtor's non-exempt assets for the benefit of creditors by creating a Creditors Trust and transferring all of the Debtor's remaining non-exempt assets to the trust for disposition by the Creditors Trustee appointed pursuant to the terms of the Plan. *See* Plan § 5.01. In addition, the Debtor purports to offer to work in the future for the benefit of his creditors by providing a series of so-called "supplements" to the Creditors Trust – including the Dower Interests Supplement, the Homestead Supplement, the Libya Supplement, the Domestic Supplement, and the Foreign Supplement, to name a few. *See* Plan §§ 1.24, 1.31, 1.33, 1.23A, and 1.30A. In general, these supplements provide certain funds to the Creditors Trust if the Debtor's future business ventures are

**Memorandum Opinion and Order**                                                                                       **Page 3**

successful and generate income for him, which he agrees to share with his prepetition creditors.

However, according to Buckeye, these supplements are inappropriately tied to the Debtor receiving a discharge of his prepetition creditors' claims. As described by Buckeye, if *any* creditor files an objection to the Debtor's discharge, all unsecured creditors are penalized because the amount of certain supplements are reduced by 60% and certain other supplements are withdrawn in their entirety. *See* Plan §1.45. Buckeye claims this provision impermissibly conditions receipt of benefits under the Plan upon the absence of an objection to the Debtor's discharge.

Buckeye's description of the supplements and the Supplement Overlay Conditions is generally correct. And, significantly, Buckeye filed an objection to the Debtor's discharge on March 31, 2006, a few days before the confirmation hearing, thereby triggering the Supplement Overlay Conditions and the reduction of the amount of the supplements.

The Court also found the Supplement Overlay Conditions very troubling and began expressing its concerns to Debtor's counsel at the confirmation hearing. While counsel for the Debtor argued that the Debtor was simply trying to provide an incentive for his creditors to not object to his discharge frivolously because it would be expensive for the Debtor to defend himself from such an objection and particularly irritating after the Debtor had proposed to pay creditors from his post-confirmation earnings (which are not property of the estate and to which prepetition creditors have no right to recover), the Court pointed out that the reduction to the supplements was potentially as much as $390,000 – an amount well in excess of the cost the Debtor would incur in defending himself from a discharge objection. Moreover, the Court pointed out that all unsecured creditors were penalized by the action of a single creditor over whom they had no control. And, that an objecting creditor would simply be exercising a right given to him under the Bankruptcy Code – *i.e.*, the right

**Memorandum Opinion and Order**     **Page 4**

to object to the Debtor's discharge.

After the evidence was concluded and during closing arguments, as the Court's concerns over the Supplement Overlay Conditions became more apparent, counsel for the Debtor asked for a brief recess so that he might confer with the Debtor. After a short recess, Debtor's counsel announced that the Debtor proposed to modify the Supplement Overlay Conditions yet again – *i.e.*, to limit the amount of the reduction to the supplements to $75,000 (arguably less than the costs of defense of the discharge objection already on file).

While the Debtor purported to minimize the penalty to be inflicted upon his creditors by Buckeye's exercise of a right afforded to it under the Bankruptcy Code – *i.e.*, the ability to object to the Debtor's receipt of a bankruptcy discharge, by his last minute proposed modification to the Plan, that modification does not begin to sever the impermissible ties in the Plan between creditors' recoveries and the Debtor's receipt of a discharge, to which the Court now turns.

Although not specifically identified by Buckeye or any other objector to confirmation, the flaws in the Plan go much deeper. Not only is the amount to be received by creditors impermissibly conditioned upon the absence of objections to the Debtor's discharge, the Plan itself is, in effect, conditioned upon the Debtor's actual receipt of his discharge. In other words, if the Debtor's discharge is denied, there *is* no Plan. The Court will explain this conclusion further.

Nothing happens under the Plan until some number of days after the "Effective Date" of the Plan. Specifically, the "Plan Closing Date" is defined to be "as soon as reasonably possible after the Effective Date, but in no event more than 20 days after the Effective Date regardless of which conditions persist as of the Plan Closing Date as to any objection to the Debtor's discharge." Plan, § 1.36. In turn, "Effective Date" is defined in section 1.28 of the Plan; and, as relevant here, the Plan

will not go effective if an objection to discharge is filed until the "eleventh day after the order *overruling* the discharge objection is entered" (emphasis added). Plan, § 1.28. However, if the Court denies the Debtor his discharge, the Plan "will not proceed and this case will be converted to [one] under Chapter 7 once the order regarding the Debtor's discharge is final and non appealable." *Id*. Between the time that the discharge is denied and the time when "all appellate avenues" have been exhausted, the Debtor will proceed as if the Effective Date had occurred, but the Creditors Trust will not distribute any funds to creditors. Finally, the "Initial Plan Distribution Date" is defined as "sixty (60) days after the Effective Date, unless the Debtor's discharge is timely objected to by the holder of an Allowed Claim, in which case, that date shall be 30 days after the entry of an order regarding the resolution of the discharge objection by the Bankruptcy Court." Plan, § 1.32.[1]

So, what is clear from a review of all of these provisions, is that confirmation of the Plan is virtually meaningless because of Buckeye's objection to the Debtor's discharge.[2] Even if the Plan

---

[1] While this provision is arguably inconsistent with the earlier provisions, at a minimum, no distributions will be made to creditors until this Court has decided the discharge objection.

[2] The Effective Date is delayed until after an order is entered overruling an objection to the Debtor's discharge only when a timely objection to discharge is filed by the "holder of an Allowed Claim." The definition of an "Allowed Claim" is unclear, in part because the paragraph in the Plan defining it contains incomplete romanettes – *i.e.*, it contains phrases preceded by (ii) and (iii) but not a phrase preceded by (i). Reading it in its most logical fashion, an "allowed claim" appears to be defined as a claim in the amount set forth in any timely filed proof of claim unless such claim has been listed in the schedules as disputed, contingent or unliquidated, "in which case such Claim shall be allowed only if a proof of such Claim has been timely filed," and if it has been objected to or is objected to after confirmation, it is allowed only as authorized by court order. *See* Plan § 1.03. The date by which the Debtor must file objections to claims is defined as sixty days after the Effective Date. Plan § 1.15. But, as noted above, the Effective Date is delayed where the holder of an Allowed Claim objects to discharge. It is thus impossible to determine, based upon these circular definitions, when the Effective Date will occur. In other words, the Effective Date is delayed when the holder of an Allowed Claim objects to discharge, but who is the holder of an Allowed Claim may not be determined until after the Effective Date.
   All parties appear to assume that Buckeye's objection to discharge is sufficient to trigger the Plan's provisions related to objections to discharge, and this Court will do likewise, noting that Buckeye timely filed a proof of claim for $2,712,150.58 on March 11, 2005, prior to the June 7, 2005 bar date, and the Debtor has not yet filed an objection to that proof of claim.

were to be confirmed, absolutely nothing would happen (including the establishment of the Creditors Trust, the transfer of assets to that trust, and distributions to creditors) until, at a minimum, this Court ruled on Buckeye's objection to discharge. If the Court overruled the objection and granted the Debtor his discharge, then the Debtor would go forward to implement the Plan, albeit after reducing the amounts available to creditors under the supplements. If, on the other hand, the Court were to sustain Buckeye's objections to the Debtor's receipt of a discharge, the effort and expense to confirm the Plan will be wasted because "the Plan will not proceed and this case will be converted to [one] under Chapter 7 . . . ." Plan, § 1.28.

However, adding insult to injury, the Plan purports to bind this Court as to the effective date of conversion if the Debtor's discharge is denied, as the Plan provides for conversion not immediately, but only after this Court's order denying discharge is "final and non appealable." *Id*. In the interim, while the Debtor presumably exhausts his appellate avenues, creditors receive nothing and, as explained more fully below, any subsequent trustee's ability to pursue the causes of action transferred to him is almost certain to be lost.

Creation of the Creditors Trust, and the transfer of assets to that entity, will not occur until after the Effective Date. And, as noted above, if the Court denies the Debtor's discharge, the Effective Date will not occur until after appellate avenues are exhausted. After appellate avenues are exhausted, and assuming the Court's ruling is affirmed, then the case is converted to a case under Chapter 7 of the Bankruptcy Code. In that event, it is virtually certain that appointment of a Chapter 7 trustee would not occur until after the expiration of the statute of limitations for the pursuit of avoidance actions. As this case was filed on February 7, 2005, the statute of limitations will expire on February 7, 2007. 11 U.S.C. § 546(a)(1)(A). Given that Buckeye's complaint objecting to

**Memorandum Opinion and Order**  **Page 7**

discharge is set for trial docket call in August, 2006, with trial the week of August 14, 2006, it seems very unlikely that the case will be tried, and all appellate avenues exhausted, prior to the expiration of the applicable statute of limitations on avoidance actions. And, under section 546(a), if a trustee is not appointed within two years after the entry of the order for relief, avoidance actions will be time-barred.

Finally, the Plan purports to nullify section 362(c)(2) of the Bankruptcy Code. That section provides that the automatic stay terminates, as is relevant here, at "the time a discharge is granted or denied." Nevertheless, the Plan provides that if an objection to the Debtor's discharge is filed, creditors are enjoined from commencing or continuing in any manner any action or other proceedings against the Debtor or the Debtor's property until the date that the order regarding the objection to discharge is final and non appealable. *Cf. Shaw v. Ehrlich*, 294 B.R. 260 (W.D. Va. 2003), *aff'd sub nom. In re Wiencko*, 99 Fed. Appx. 466 (4th Cir. 2004) (unpublished disposition) (noting that if the debtor does not seek the protection of a stay pending appeal, creditors are free to enforce their rights upon termination of the stay by virtue of the dismissal of a case).

The inclusion of any one of these provisions in the Plan would raise concerns about the Debtor's good faith in proposing the Plan. The cumulative effect of these Plan provisions causes this Court to conclude that the Plan is completely illusory and specious and was filed by the Debtor in bad faith. Because the Plan has been proposed by the Debtor in bad faith, confirmation must be denied. Accordingly, it is not necessary to consider the remaining objections to confirmation of the Plan.

At the conclusion of the confirmation hearing, the Court asked if the Debtor objected to conversion of the case without a further hearing in the event the Court concluded that the Plan could not be confirmed. The Debtor agreed that conversion would be appropriate if confirmation was

denied.

Accordingly, confirmation of the Plan is denied and this case is converted to one under Chapter 7 of the Bankruptcy Code.

**SO ORDERED**.

### End of Order ###